**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEROSITY.ORG<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>GENEROSITY BEVERAGES, INC; and DOES 1 to 20 inclusive,<br><br>　　　　Defendants. | Case No. 2:17-CV-6054-ODW-KS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [13]** |

## I. INTRODUCTION

Plaintiff Generosity.org ("GW") brings this breach of contract and trademark action against Defendant Generosity Beverages, Inc. ("GBI") and now moves for an order enjoining GBI from using GW's alleged trademarks. (ECF No. 13.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART**, Plaintiff's Motion.

## II. FACTUAL BACKGROUND

GW is a registered 501(c)(3) Non-Profit Organization that was created to raise donations to fund the construction of water wells in impoverished countries. (Declaration of Philip Wagner ("Wagner Decl.") ¶¶ 4–5, ECF No. 14.) Philip

Wagner, a pastor at the Los Angeles Oasis Christian Church, founded GW in 2007, and registered the organization as a 501(c)(3) in November 2008. (*Id.*) On June 28, 2007, GW applied to register the name "GENEROSITY WATER" for use in connection with "bottled drinking water," and the USPTO issued a trademark registration on November 25, 2008, under U.S. Reg. No. 3,538,005 (the "'005 Mark"). (*Id.* ¶ 6.)

In October 2009, Micah Cravalho joined GW's Board of Directors. (Declaration of Micah Cravalho ("Cravalho Decl.") ¶ 4, ECF No. 25-1.) In December 2012, Cravalho and Jordan Wagner, Philip Wagner's son, formed GBI, a for-profit corporation. (*Id.* ¶ 4.) At this point, Jordan Wagner was also acting as GW's President. (*Id.* ¶ 4.) Shortly after its formation, Jordan Wagner became GBI's Chief Executive Officer, Cravalho became the Chief Operations Officer, and Justin Beckett[1] joined GBI's Board of Directors. (*Id.* ¶ 6.)

On February 19, 2013, GW and GBI entered into a trademark license agreement whereby GW granted GBI an exclusive right to use and commercially exploit the '005 Mark, i.e. the name "Generosity Water," in connection with the production and sale of bottled drinking water (the "License Agreement"). (Compl., Ex. A, ECF No. 1.) As compensation for the license, GBI agreed to pay GW, on a quarterly basis, a royalty equal to twenty percent of GBI's net income from the sale of the bottled water. (*Id.* ¶¶ 4.2, 4.3.) The License Agreement also required GBI to submit written royalty statements to GW. (*Id.* ¶ 4.4.)

GBI has only made two payments to GW. (Wagner Decl. ¶ 10.) In 2013, GBI covered $5,000 in expenses for an outside vendor to construct GW's website. (*Id.*) In 2014, GBI paid $10,000 as an advance payment against royalties to help fund two water-well rehabilitation projects in Haiti. (*Id.*)

The License Agreement also provides that GBI "shall own all intellectual property rights . . . arising from or based upon GBI's creation, development,

---

[1] Justin Beckett was also a member of GW's Board of Directors. (*Id.* ¶ 13.)

manufacturing, marketing, promotion, distribution and sale of [the bottled water sold under the License Agreement], together with all associated goodwill." (Compl., Ex. A ¶ 8.2.) The parties also agreed that "GW shall not, at any time *during or after the Term of this Agreement*, dispute or contest, directly or indirectly, GBI's exclusive right and title to any portion of the GBI IP." (*Id.* (emphasis added).)

On March 5, 2013, GW applied to register a logo, the word "Generosity" in blue large capital letters with a water droplet design, to be used for bottled drinking water, and the USPTO issued the trademark registration on January 19, 2016, under U.S. Reg. No. 8,889,854 (the "'854 Mark"). (Wagner Decl. ¶ 7, Ex. B.)

Also in March 2013, GBI engaged a designer to begin working on the design of a logo for GBI's bottled water, which included a water droplet design within the "o" in "Generosity." (Cravalho Decl. ¶ 7.) In early 2015, GBI approached the same designer to assist in updating the logo and prepare bottle designs and packaging layouts. (*Id.* ¶ 9.) GBI paid for all of the design work associated with the logo. (*Id.* ¶ 10.) The redesigned logo GBI selected and now uses is:

**GENER◯SITY**

On May 29, 2015, GW filed a subsequent application to register a logo for "Generosity," with a description almost identical to the '854 Mark. (Wagner Decl. ¶ 8, Ex. C.) The USPTO issued the trademark registration on January 5, 2016, under U.S. Reg. No. 4,881,004 (the "'004 Mark"). (Wagner Decl. ¶ 8.) GBI alleges that both the '854 and '004 Marks were based on designs that it paid for, solicited, and selected. (Opp'n 12–13.)

On June 11, 2015, GW and GBI entered into an amendment to the License Agreement (the "Amendment"). (Compl., Ex. B, ECF No. 1.) Under the Amendment, GBI agreed to pay GW a monthly fee of $2,000.00 for six months. (*Id.* at 1.) GBI also agreed to pay an additional royalty of $1.00 for every twelve one-liter

bottles of water produced by or on behalf of GW.[2] (*Id.*)  GBI claims that Jordan Wagner and Justin Beckett, who at the time held positions for both GBI and GW, caused GBI and GW to enter into the Amendment without input from anyone else at GBI. (Cravalho Decl. ¶¶ 13–14.)

GBI claims that in or around February 2016, GBI's Board of Directors discovered a "series of improprieties" by Jordan Wagner and requested his resignation. (*Id.* ¶ 16.) Shortly thereafter, Jordan Wagner stepped down from his executive role in GBI and Justin Beckett resigned his position on GBI's Board of Directors. (*Id.* ¶ 17.)

On October 13, 2016, GW applied to register the below logo for Generosity.org, which incorporated the water droplet design. (Wagner Decl. ¶ 9.) The USPTO issued the trademark registration on May 16, 2017, under U.S. Reg. No. 5,204,887 (the "'887 Mark"). (*Id.* Ex. D.)



In December 2016, GBI applied to register the "droplet logo" below for use on bottled drinking water. (Cravalho Decl. ¶ 12.) The USPTO issued the trademark registration under U.S. Reg. No. 5,236,930 on July 4, 2017 (the "'930 Mark"). (*Id.* Ex. 4.)

In March 2017, Jordan Wagner and Justin Beckett negotiated the sale of all of their GBI stock. (Cravalho Decl. ¶ 19.) On May 12, 2017, GW sent GBI a notice of default, claiming that GBI was in default of the License Agreement for failure to pay

---

[2] The rates differed for larger or smaller bottles, and were to be determined on a pro rata basis.

royalties.  (Compl. ¶ 48, Ex. C.)  GW sent a second default notice to GBI on May 22, 2017.  (*Id.* ¶ 50, Ex. D.)  On June 1, 2017, GW terminated the License Agreement and has since made multiple demands for GBI to immediately stop using the '005, '854, and '004 Marks.  (Wagner Decl. ¶ 11.)

GBI operates the website "generositywater.org."  (Wagner Decl. ¶ 13.)  The website advertises bottles of water bearing the '004 Mark.  (*Id.*, Ex. F.)



GW initiated this lawsuit against GBI on August 15, 2017, alleging claims for breach of contract, trademark infringement, counterfeiting, and violations of California's unfair competition laws.  (Compl.)  GW alleges that GBI continues to use the '005, '854, and '004 Marks.  (Compl. ¶ 83.)  On September 1, 2017, GW moved for a preliminary injunction seeking to stop GBI's use of all three Marks.  (Mot.)

On September 25, 2017, GBI answered GW's Complaint and asserted various counterclaims against GW, namely trademark infringement of the '930 Mark, breach of contract, and a request for a declaration invalidating the '854, '004, and '887 Marks.  (Countercl., ECF No. 21.)  On October 2, 2017, GBI opposed GW's Motion for Preliminary Injunction.  (Opp'n, ECF No. 25.)  The Court heard oral argument from both parties on GW's Motion on December 4, 2017.  (ECF No. 35.)

## III. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20; *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). In each case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Further, courts of equity should particularly consider the public consequences in employing the extraordinary remedy of injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

## IV. DISCUSSION

GBI opposes GW's Motion for Preliminary Injunction on the grounds that GW (1) cannot establish it is likely to succeed on its trademark infringement claims; (2) will not be irreparably harmed without the injunction; and (3) has unclean hands. (Opp'n, ECF No. 25.) The Court addresses each argument in turn.

### A. Likelihood of GW Succeeding on its Trademark Infringement Claims

A claim for trademark infringement requires a plaintiff to prove that (1) it owns a valid, protectable mark, and (2) the defendant used a mark confusingly similar to the plaintiff's mark. *Brookfield Comm., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999).

GBI claims that GW is not likely to succeed on its trademark infringement claims because GBI owns the intellectual property that resulted in the '854 and '004 Marks. (Opp'n 10.) GBI argues that the License Agreement granted GBI all intellectual property rights, other than the '005 Mark, arising from GBI's marketing, promotion, distribution and sale of the bottled drinking water. Further, GBI asserts

that its ownership of this intellectual property continues even after the termination of the License Agreement pursuant to ¶ 11.5, which provides:

> ***Following the expiration or termination*** of this Agreement . . . GBI shall have the ***right to use and exploit GBI IP on bottled water or other commercial products***, so long as and subject to GBI taking all commercially reasonable and available actions to advise the public that any such products are not authorized, approved, sponsored or endorsed by GW.

(emphasis added). Based on this language, GBI claims that its continued marketing and sales of bottled water bearing the name "Generosity" and the '854 and '004 Marks, cannot be deemed as infringing any rights held by GW.

GW responds that the License Agreement provides that GW expressly retained all rights to the '005 Mark *in any form*, which would include all the later designs and trademarks that use the "Generosity" name. GW further argues that ¶ 11.4 of the License Agreement requires that after termination, GBI must "refrain from all future use" of the '005 Mark and "any marks, name or material that is a simulation of" the '005 Mark or "is confusingly similar thereto." (Reply 4, ECF No. 27.) GW also points to the registrations of the '854, '004, and '887 Marks, which were all registered in GW's name. GW argues that registration of a mark constitutes prima facie evidence of the validity of the mark and the registrant's exclusive right to use the mark. (Reply 3 (citing *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007).)

The likelihood of GW succeeding on its trademark infringement claim hinges on whether (1) GBI owns the IP that GW registered as the '854 and '004 Marks and (2) the '854 and '004 Marks are confusingly similar to the '005 Mark.

First, the language of the License Agreement grants GBI intellectual-property rights in all designs "arising from or based upon GBI's creation, development, manufacturing, marketing, promotion, distribution and sale of" bottled water pursuant to the Agreement. GW does not contest GBI's assertion that GBI oversaw and paid for the creation of the design that led to the '854 and '004 Marks. It is also undisputed

that GBI caused the creation of those designs in order to promote and sell bottled water under the License Agreement. Therefore, there is a material dispute as to whether GBI owns those designs.

Second, GW has not met its burden to prove that the '854 and '004 Marks are "confusingly similar" to the '005 Mark. While the word "generosity" in the '854 and '004 Marks is included in the name "Generosity Water"—i.e. the '005 Mark—both "generosity" and "water" could be considered generic words, which courts regularly disregard when analyzing whether marks are "confusingly similar." *See e.g.*, *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1390 (Fed. Cir. 1989) (finding that as a preliminary to comparing the marks in their entireties it is not improper to give less weight to the generic "pecan" part of the marks in finding no likely confusion in: PECAN SANDIES pecan cookies vs. PECAN SHORTEES pecan cookies); *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) ("Neither the design element nor the generic term 'café' offers sufficient distinctiveness to create a different commercial impression").

Finally, GW also presents evidence that GBI offered to buy the '854 and '004 Marks from GW to support its argument that GW rightfully owns those Marks. (Reply 5–6.) However, the circumstances surrounding the proposed buyout are unclear. Both offers were made when there was substantial overlap in the management of both companies. Additionally, in one email from Cravalho, he explains to Philip Wagner that he is proposing the buyout because potential investors are uncomfortable lending money to GBI when all it has is a licensing arrangement with a non-profit. (ECF No. 29, Ex. C.) Therefore, Cravalho's offer for GBI to buy the trademarks could be construed as an attempt for additional "security" to appease potential investors, rather than an unequivocal admission that GBI does not own those Marks.[3]

---

[3] GBI raised, for the first time at the hearing on GW's Motion, the argument that these offers are inadmissible as settlement communications under Federal Rule of Evidence 408. Because GBI has

For these reasons, there are sufficient remaining legal and factual uncertainties demonstrating that GW has not established that it is likely to succeed on its trademark infringement claims for the '854 and '004 Marks, at this juncture.

What cannot be questioned, however, is that the License Agreement specifically reserved GW's ownership rights to the name "Generosity Water," which is the substance of the '005 Mark. (Compl., Ex. A ¶ 1.3.) GBI uses that name in its website domain, "generositywater.com." However, because GW has not met its burden to establish irreparable harm (*see* Section IV.B below), even a more limited preliminary injunction, such as ordering GBI to stop using that domain name, is not appropriate at this time.

### B. Irreparable Harm to GW

GW claims that GBI's use of the name "Generosity" to sell bottled water irreparably harms GW's reputation and goodwill because the public will associate GBI's products with GW. GW claims that it "no longer wishes to be associated with any entity that fails to abide by its contractual obligations and seeks to use a charitable organization as a springboard to generate unjust profits." (Mot. 14.) GW also argues that this shows a "loss of control over [GW's] business reputation and damage to goodwill" constituting irreparable harm. (Reply 10 (citing *Herb Reed Enter., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *2Die4Fourt v. Hillair Capital Mgmt., LLC*, 692 F. App'x 366, 369 (9th Cir. 2017).)

GW's irreparable-harm claim centers on GBI's alleged continued use of statements on its website indicating that it is still associated with GW. GW claims that as of October 6, 2017, in the "FAQ" section on GBI's website titled "How does Generosity Water give back?" the following answer is provided:

---

not provided enough information to make an evidentiary ruling on that issue, the Court declines to strike the evidence at this time.

> We love this part! [GBI] gives two people clean water for one month for every bottle purchased[,] we do this by our non-profit partner, Generosity.org. Each bottle of Generosity Water is marked with a QR code that can instantly show the exact community your purchase supported! To learn more about our non-profit partner, check out generosity.org.

(Reply 11.) The Court finds that the above statement, and the potential for public confusion as to whether GBI and GW are still affiliated, could rise to the level of loss of goodwill necessary to establish irreparable harm. However, the Court also finds that the alleged harm could be alleviated with a more limited injunction precluding GBI from making any public claim of association or partnership with GW. As this limited injunction addresses the only claim of harm, the Court finds that GW has not shown irreparable harm so as to justify a preliminary injunction requiring GBI to cease all use of the '005, '004, and '854 Marks.

### C. Unclean Hands & Balance of Equities

GBI claims that GW is precluded from equitable relief because it has unclean hands. (Opp'n 23 (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933).) GBI claims that the only reason it has been sued for breach of contract and trademark infringement is because Jordan Wagner and Justin Beckett, while functioning in their capacities for GW and GBI, negotiated an untenable Amendment to the License Agreement. (Opp'n 24.) GBI asserts that Jordan Wagner and Justin Beckett knew that GBI would not be able to pay the fees and royalties required under the Amendment and failed to cause GBI to make any such payments when they held leadership positions at both GBI and GW. (*Id.*)

GW responds that in a trademark case, in order to make out an unclean hands defense, the defendant "must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." (Reply 17 (citing *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002).)

Further, GW claims that under the Ninth Circuit's holding in *Japan Telecom*, a defendant "must show that plaintiff used the trademark to deceive customers." (*Id.*)

It is doubtful that the Ninth Circuit intended its holding in *Japan Telecom* to provide the only avenue to establishing an unclean-hands defense in a trademark infringement case. Rather, that court addressed the defendant's argument that the plaintiff's use of the mark in question was deceptive. However, the burden to show that a party is precluded from equitable relief due to unclean hands is significant. *See Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004) ("Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands."); *see also TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011) (distinguishing between merely "bad intentions" and unclean hands).

Even if GBI cannot make out an unclean-hands defense, the balance of equities weighs against entering GW's requested preliminary injunction at this time. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief"). First, GW has presented a weak showing of harm as a result of GBI's use of the alleged infringing marks. Second, it appears that GBI's only source of income is selling bottles of water bearing the name "Generosity." Therefore, the Court is hesitant to effectively cut off GBI's ability to conduct any business when there are allegations of self-dealing between the leadership of GW and GBI supported by evidence of vastly overlapping management and leadership in the companies. And lastly, GBI claims that it would lose its next round of investment and any sales or distribution prospects over the next year should the Court grant GW's requested preliminary injunction. (Cravalho Decl. ¶ 24.) Given these considerations, the Court declines to issue the preliminary injunction requested by GW.

### D. Settlement Conference and Stay of the Case

Upon consideration of the parties' moving and opposition papers and the arguments presented at the hearing, the Court finds that the parties would benefit from participating in a settlement conference with the Magistrate Judge assigned to this case. Therefore, the Court **ORDERS** the parties to conduct a settlement conference with Magistrate Judge Stevenson no later than **February 26, 2018**.

The Court also finds that a short stay of this case is appropriate to allow the parties to conduct the settlement conference without also incurring substantial legal fees and expenses. *See Landis v. North Am. Co*, 29 U.S. 248, 254 (1936). Therefore, the Court **STAYS** this case, pending the outcome of the settlement conference and **VACATES** all other dates and deadlines. Should the parties be unable to reach an agreement at the settlement conference, they shall meet and confer and within ten (10) days of the settlement conference submit a stipulation to the Court lifting the stay and outlining a proposal for the remaining dates and deadlines.

### IV. CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** GW's Motion for Preliminary Injunction. (ECF No. 13.) The Court preliminarily enjoins GBI from making any claim of affiliation or partnership with GW. All other relief requested in GW's Motion is **DENIED**. Further, the Court **ORDERS** the parties to conduct a settlement conference with Magistrate Judge Stevenson on or before **February 26, 2018.** All other dates and deadlines are **VACATED** and the Court **STAYS** this case pending the outcome of the settlement conference.

**IT IS SO ORDERED**.

December 6, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**